UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| JOHN DOE, | Civil No. 05-0409 (PJS/RLE) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION |
| DEPARTMENT OF VETERANS AFFAIRS OF THE UNITED STATES OF AMERICA; HONORABLE R. JAMES NICHOLSON, Secretary of the Department of Veterans Affairs, in his official capacity, | FOR SUMMARY JUDGMENT |
| Defendants. | |

---

Denise Y. Tataryn, MANSFIELD TANICK & COHEN, PA, 220 South Sixth Street, Suite 1700, Minneapolis, MN 55402; and Katherine L. MacKinnon, MACKINNON LAW OFFICE, 3744 Huntington Avenue, St. Louis Park, MN 55416, for plaintiff.

Friedrich A.P. Siekert, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for defendants.

Plaintiff John Doe (a pseudonym) brings this action under the Privacy Act, 5 U.S.C. § 552a,[1] against defendant Department of Veterans Affairs and defendant R. James Nicholson, in his official capacity as the Secretary of the Department (collectively "the VA").[2]  This matter is

---

[1] Doe's complaint also refers to 38 U.S.C. § 7332, which protects veterans' medical records, but he is not seeking relief under that statute.  *See* Pl.'s Mem. Opp. Defs.' Mot. 32.

[2] The parties earlier stipulated to the dismissal without prejudice of a third defendant, Samuel W. Hall, M.D.  *See* Docket No. 23.  In the course of briefing the present motions, Doe also agreed to dismiss Secretary Nicholson without prejudice.  *See* Pl.'s Mem. Opp. Defs.' Mot. 42-43.  It is not necessary to dismiss Secretary Nicholson separately, though, as this Order dismisses Doe's entire complaint with prejudice.

before the Court on the VA's motion to dismiss and for summary judgment and on Doe's cross-motion for summary judgment on liability. For the reasons set forth below, the VA's motion for summary judgment is granted.

## I.  BACKGROUND

The VA operates the Minneapolis Veterans Administration Medical Center ("the VAMC"). The VAMC maintains an Employee Health Service department ("EHS"), which provides limited medical services to VAMC employees and conducts pre-placement medical exams of potential employees. These services generate records that are kept in the custody of EHS. At the time of the events giving rise to this lawsuit, Dr. Samuel W. Hall was an occupational physician working part-time at EHS.

Doe, who is himself a veteran, worked as a housekeeping aide at the VAMC from July 2000 to September 2004. Doe Dep. 28-29. Doe is HIV-positive and has used marijuana for medical purposes. (Those who are HIV-positive often have difficulty maintaining their weight, and some find that using marijuana helps stimulate their appetites.) During most of the time that he was employed at the VAMC, Doe was supervised by John Kangas.

Doe first met Dr. Hall on September 30, 2002, when Doe went to EHS complaining of chills and nausea. In the course of giving his medical history, Doe informed Dr. Hall that he was HIV-positive. Several months later, on January 30, 2003, Doe again visited EHS to get treatment for a work-related muscle strain. On that occasion, Doe saw Dr. Barbara Gibson, one of Dr. Hall's colleagues. Dr. Gibson told Doe to treat his injury with ice and take a few days off. She also directed Doe to see Dr. Hall the following Monday, February 3, for follow-up care.

Doe did so. At this February 3 meeting, Doe again told Dr. Hall that he was HIV-positive. Doe also told Dr. Hall that he used marijuana to improve his appetite. Dr. Hall was apparently troubled by the report of marijuana use. Doe recalls that Dr. Hall interrogated him about whether he was chemically dependent — which Doe denied — and Doe claims that Dr. Hall was rude and condescending. For his part, Dr. Hall remembers urging Doe to stop using marijuana and advising him about workplace policies forbidding the use of illegal drugs. Dr. Hall completed a form clearing Doe to return to work that same day. Because his shift was nearly over, however, Doe did not return to work until the next day.

Three weeks later, on February 24, Dr. Hall and Kangas had a telephone conversation about the amount of time that Doe was absent from work. Neither one clearly recollects who initiated the call, but Kangas testified that Dr. Hall most likely called him. Kangas Dep. 71-72. In any event, Dr. Hall and Kangas discussed Doe's absences from work, and Kangas evidently told Dr. Hall that a recent note that Kangas had received from Doe's regular doctor was vague and unhelpful. Dr. Hall told Kangas to ask Doe's doctor for further clarification and to send Doe to EHS the next time that Doe missed work. Kangas Dep. 56.

Two days later, on February 26, Doe arrived at work and was told by a fellow employee that he was supposed to report to Dr. Hall in EHS. Doe was not told why he was supposed to meet with Dr. Hall. This mysterious directive troubled Doe, so he called George Rankin, his union steward, and asked him to meet Doe at Dr. Hall's office. As it turned out, Kangas had directed that Doe be asked to see Dr. Hall, but Kangas had told neither Doe nor Dr. Hall that he wanted the two of them to meet, and Kangas himself was out sick on February 26. Thus, when

Doe appeared in Dr. Hall's office on February 26, neither Dr. Hall nor Doe knew why they were meeting.

That, however, did not prevent Dr. Hall from proceeding with the meeting. Dr. Hall assumed, based on his February 24 telephone conversation with Kangas, that Kangas must have wanted Dr. Hall to talk to Doe about his absenteeism. Hall Dep. 112-13. After Dr. Hall and Doe talked for a short time, Rankin (the union steward) knocked on the door of Dr. Hall's office. According to Doe, before Rankin entered, Doe told Dr. Hall that he did not want any of his medical information disclosed. Doe Dep. 109, 114, 118, 121. Dr. Hall denies that Doe said anything of the sort. Hall Dep. 128-29. Rankin then entered the room, the conversation resumed, and, without warning, Dr. Hall told Rankin that Doe was HIV-positive and suspected of using drugs. Doe Dep. 133; Rankin Decl. ¶ 4; Hall Dep. 126. Doe was incensed. He immediately and angrily protested that he had told Dr. Hall not to disclose this information to Rankin. Dr. Hall and Doe argued, and Doe left Dr. Hall's office. Doe later complained to a patient representative about Dr. Hall's conduct and sought counseling to deal with his feelings of anger and betrayal.

Doe eventually filed this lawsuit against the VA, seeking damages under the Privacy Act. Both the VA and Doe have moved for summary judgment.

## II. ANALYSIS

### A. *Standard of Review*

A party is entitled to prevail on a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment, a court must assume that the nonmoving party's evidence is true and draw all justifiable inferences arising from the evidence in that party's favor.  *Taylor v. White*, 321 F.3d 710, 715 (8th Cir. 2003).

### B. The Privacy Act

This case involves a deplorable — indeed, almost incomprehensible — violation of Doe's privacy.  Under any law worthy of the name "privacy act," Doe should be able to sue Dr. Hall or the government agency that employed him.  Unfortunately, the federal Privacy Act — at least as interpreted by the Eighth Circuit — does nothing to protect Doe from the invasion of privacy that he suffered at the hands of Dr. Hall.

Subject to certain exceptions, the Privacy Act prohibits federal agencies from disclosing "any record which is contained in a system of records by any means of communication to any person . . . except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains[.]"  5 U.S.C. § 552a(b).  It is undisputed that information about Doe's HIV-positive status and his use of marijuana is contained in records subject to the Privacy Act, that Dr. Hall himself generated some of those records, and that Dr. Hall disclosed information contained in the records without Doe's prior written consent.

Why, then, can Doe not recover in this action against the VA?  The answer, quite simply, is because Dr. Hall did not learn that Doe was HIV-positive and using marijuana *from a record*.  Rather, Dr. Hall learned this information *from Doe*.  Thus, as the Eighth Circuit interprets the Privacy Act, Dr. Hall was free (under the Act, at least) to disclose this extraordinarily private information to anyone and everyone.  Indeed, Dr. Hall could have walked down to the VAMC

cafeteria, stood on a chair, and, using a megaphone, told the patients and staff that Doe was HIV-positive and using marijuana — all without violating the Privacy Act. But if Dr. Hall had learned these facts from reading a record rather than from talking with Doe, then the Privacy Act would protect Doe.

The seminal opinion interpreting the Privacy Act to protect records rather than privacy is *Olberding v. United States Department of Defense*, 709 F.2d 621 (8th Cir. 1983) (per curiam). In *Olberding*, the Eighth Circuit held that "'the only disclosure actionable under section 552a(b) is one resulting from a retrieval of the information initially and directly from the record contained in the system of records.'" 709 F.2d at 622 (quoting *Olberding v. U.S. Dep't of Defense*, 564 F. Supp. 907, 913 (S.D. Iowa 1982)); *accord Hoffman v. Rubin*, 193 F.3d 959, 966 (8th Cir. 1999) (federal law-enforcement agent's disclosure not actionable where the agent did not obtain the information from an agency record). As the Eighth Circuit explained, the purpose of the Privacy Act is to "'preclude a system of records from serving as the *source* of personal information about a person that is then disclosed without the person's prior consent.'" *Olberding*, 709 F.2d at 622 (quoting *Olberding*, 564 F. Supp. at 913).

The Eighth Circuit's decision finds considerable support in the language of the Privacy Act. There is also no doubt that the Privacy Act was motivated, at least in part, by the fact that the systematic gathering, recording, and storage of enormous amounts of personal information that can be easily retrieved presents a threat to personal privacy on a vastly different scale than the occasional loose-lipped office gossip. At the same time, *Olberding*'s holding is difficult to square with the concern for privacy animating the Act, and, as described below, other circuits

have interpreted the Act in a manner that would give Doe a remedy under the facts presented here. Perhaps the Eighth Circuit will use this case as a vehicle for revisiting *Olberding*.[3] In the meantime, though, *Olberding* binds this Court.

Doe tries to distinguish *Olberding* in several ways. First, Doe argues that, in *Olberding*, the private information did not become part of a record in a system of records until *after* it was disclosed, whereas in Doe's case Dr. Hall learned the private information, made a record of it, and *then* disclosed it. But while it is true that the initial disclosure in *Olberding* occurred before a record was created, there were many later disclosures that occurred after the record was created, and it is apparent from the district court's opinion that the plaintiff claimed that all of those disclosures violated the Privacy Act. *See Olberding*, 564 F. Supp. at 913. In holding that the disclosures were not actionable, the district court did not distinguish between pre- and post-record disclosures. Instead, the district court simply held that, because the information was not initially retrieved from a record, its disclosure did not violate the Act. *Id.*

Even if *Olberding* did not foreclose Doe's argument concerning pre-record disclosures, the distinction between pre- and post-record disclosures urged by Doe finds no support in the language of the Privacy Act. Moreover, under Doe's interpretation, Dr. Hall would have been free to walk down to the VAMC cafeteria and broadcast Doe's HIV-positive status and marijuana use at any time, just as long as Dr. Hall did not write those facts down on a piece of

---

[3]The Court notes that *Olberding* is a one-page, per curiam opinion that consists mostly of passages quoted from the district court's opinion. If the Eighth Circuit were inclined to reexamine the holding of *Olberding*, this case presents an appropriate vehicle, given that its facts are egregious and largely undisputed, and given that Doe is represented by highly skilled and dedicated counsel.

paper. Once that happened, Dr. Hall could no longer disclose the information. The lines drawn by Doe have no more to recommend them than the lines drawn by *Olberding*.

Doe next argues that *Olberding* does not apply when the agency official who improperly disclosed private information was also responsible for generating a record containing that private information. Cases in other jurisdictions adopt this view. *See, e.g.*, *Bartel v. FAA*, 725 F.2d 1403, 1410-11 (D.C. Cir. 1984). The *Bartel* court reasoned that, when an agency official in Dr. Hall's position acquires private information from someone in Doe's position for inclusion in a record, the agency official has used the power of the federal government to acquire and store private information. It is this power, the *Bartel* court said, that the Privacy Act was intended to restrain. *Id.* at 1410-11.

The Court has sympathy for the *Bartel* rule, under which Doe would be entitled to relief. But the Court cannot adopt that rule in this case. First, the Court cannot find a basis for the *Bartel* rule in the language of the Privacy Act, and the Court must respect the policy choices made by Congress, even if the Court wishes that Congress had gone further in protecting privacy. Second, the Court is foreclosed by *Olberding* from adopting the *Bartel* rule. True, in this case Dr. Hall both disclosed the private information and created some of the records containing that private information, whereas in *Olberding* the government officials who disclosed the private information did not themselves generate a record containing that private information. But in *Olberding*, as in *Bartel*, the disclosures were made by individuals directly involved in collecting the private information that was ultimately included in a record. *Olberding*, 564 F. Supp. at 910. Indeed, the plaintiff in *Olberding* was subject to greater compulsion to reveal sensitive information than the plaintiff in *Bartel*. Olberding's employer —

the military — *ordered* him to undergo a psychiatric evaluation. *Id.* at 910. Yet the Eighth Circuit affirmed the district court's conclusion that the subsequent disclosures concerning that psychiatric evaluation did not violate the Act, despite the fact that the very person who ordered the evaluation made some of the disclosures. *Olberding*, 709 F.2d at 622. It is just not possible to reconcile the reasoning of *Bartel* with the holding of *Olberding*.

Finally, Doe points out that *Olberding* involved not the disclosure of the actual results of the psychiatric evaluation, but only the disclosure of the fact of the evaluation. That is not entirely true, nor is it much of a distinction. *Olberding* involved repeated disclosures by many individuals. Some of those disclosures concerned the results of the evaluation, and some concerned only the fact of the evaluation. *Olberding*, 564 F. Supp. at 910-11. The Eighth Circuit did not distinguish one type of disclosure from another.

Moreover, even if all of the disclosures had been only of the fact that the plaintiff had undergone a psychiatric evaluation, it is difficult to see why that in itself would have rendered the Act inapplicable. The fact of the examination, no less than the result, is an "item . . . of information about an individual that is maintained by an agency," and thus comes within the Act's definition of a "record." 5 U.S.C. § 552a(a)(4).

Finally, *Olberding* itself illustrates why the distinction identified by Doe is meaningless. Olberding's psychiatric evaluation concluded that he was *not* suffering from mental illness. Olberding may very well have deemed the disclosure of that result to be a lot less offensive than the disclosure of the fact that his superiors so doubted his mental fitness that they ordered him to submit to a psychiatric evaluation.

In sum, the Court is unable to find an intellectually honest way to distinguish *Olberding*. Dr. Hall obtained his information directly from Doe, and not from a record within a system of records, and thus, under *Olberding*, Dr. Hall's appalling violation of Doe's privacy does not give rise to a cause of action under the Privacy Act. In light of this holding, it is unnecessary to address the VA's other arguments in favor of dismissal or summary judgment. The VA's motion for summary judgment is granted.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendants' motion to dismiss and for summary judgment [Docket No. 30] is GRANTED in part and DENIED in part. Defendants' motion for summary judgment is GRANTED, while defendants' motion to dismiss is DENIED as moot.

2. Plaintiff's motion for summary judgment on liability [Docket No. 43] is DENIED.

3. Plaintiff's complaint [Docket No. 1] is DISMISSED WITH PREJUDICE AND ON THE MERITS.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: January 31, 2007                    s/Patrick J. Schiltz
                                           Patrick J. Schiltz
                                           United States District Judge